UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Malveaux and Senior Judge Frank
Argued at Norfolk, Virginia

WAYNE GIBSON WEIS, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 0785-15-1          JUDGE MARY BENNETT MALVEAUX
                                      OCTOBER 18, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MATHEWS COUNTY
Jeffrey W. Shaw, Judge

Charles E. Haden for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Wayne Gibson Weis, Jr. ("appellant") was convicted of assault and battery of a family

member, in violation of Code § 18.2-57.2. On appeal, he argues that the trial court erred in denying

his motion to strike for cause a member of the venire who indicated during *voir dire* that he agreed

with the statement that "no man ever has a right to raise a fist to a woman." We find no abuse of

discretion in the trial court's refusal to strike the juror for cause. Accordingly, we affirm the

decision of the trial court.

I. BACKGROUND

December 7, 2013 Incident

Prior to December 2013, Amanda Love had been in a relationship with appellant for

several years, and they had a child in common. Love and appellant had been living together for

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

about a year. On December 7, 2013, Love returned to the couple's house and discovered appellant in the bedroom, naked, and in bed with another man.

Love and appellant had different versions of what occurred after her discovery. Love testified at trial that she attempted to leave, but that she and appellant started to argue over a child car seat. Love started pulling at appellant's clothing to pull him away from her vehicle. Appellant pushed Love against her car, and they had a "tug of war" over the car seat. Appellant "body slammed" Love several times as she was trying to retrieve items from the home. They continued to argue, and appellant pushed Love into the ground several times, grabbing her by her clothing and throwing her to the ground. By this point, Love was soaking wet and covered with mud. She went into the house and changed into one of appellant's shirts. When she came out, appellant tried to take the shirt off of her. He said to her, "bitch, you wanna go swimming?," and then attempted to drag her to a creek. He was unable to drag her there, so instead shoved her into a mud puddle. Appellant then let her get up, and she left the property. Love testified that she did not hit appellant during the incident. At trial, the Commonwealth introduced photographs of Love showing cuts and marks from the altercation.

At trial, appellant testified that Love was "assaultive" and "very agitated" after she found him with another man. He said that they argued over the car seat and that during this argument Love pulled appellant's clothing off of him. He stated that he was afraid she would hit him in the face, so he "bear hug[ged]" her and put her down on the ground. He told her to stop hitting him and then released her. Love then got back up and attempted to take the keys to appellant's truck. Appellant asserted that he grabbed Love's waist and got her down to the ground. Love got up and went into the house, and appellant tried to leave, but Love got into her vehicle and blocked his truck from exiting. Love dragged appellant out of the truck, and he "laid her down" again. Appellant testified that Love hit appellant in his neck, throat, and eye, and then left in her

vehicle. Appellant stated that he never struck Love during the altercation. He said his actions in putting her on the ground were only to protect himself from her.

<em>Voir Dire</em>

At trial, during *voir dire*, defense counsel asked the venire if the experience of having been in a physical fight would prevent them from being fair and impartial in judgment. In response, one member of the panel stated, "[I]t's just my belief that no man ever has a right to raise a fist to a woman. So if that is what it will be, that will cause a problem." Three other prospective jurors said that they agreed with that statement, including Juror Owens. Appellant moved to strike Owens for cause, because of his belief that no man has the right to hit a woman. Owens was brought back for further *voir dire* outside the presence of the rest of the venire, during which the following colloquy between the trial judge and Owens occurred:

> THE COURT: Maybe you grew up to be taught that boys aren't supposed to hit girls, and technically the law is that nobody is supposed to hit anybody unless there's justification. One of those justifications is what is called self-defense, that the law allows a person who has reasonable apprehension of bodily injury to use force to prevent that, that's the classic self-defense definition. Would you use a different standard or try to apply a different standard, depending on the sex of the person? In other words, would you apply a different standard if it was a man defending against a man, a woman defending against a man, or a man defending against a woman? Would any of those scenarios cause you to apply a different standard of proof or reason? What is your theory on that issue?
>
> [OWENS]: As you stated, I was taught all my life that you don't hit a woman, you don't hit a girl, so forth and so on. I do believe in self-defense. . . . [A]s far as how I would do if a woman was beating on me, I think I could control it without actually hitting her.
>
> THE COURT: That's in your situation. But in the general situation, would you apply a different standard?
>
> [OWENS]: Well, it would depend on what the woman was doing.
>
> THE COURT: Okay.

- 3 -

[OWENS]: It would totally depend on how much force I would need to defend myself or how much force somebody would need to defend themselves.

THE COURT: Is there a different standard then that you would apply for a man defending himself from another man versus a man defending himself from a woman?

[OWENS]: Yes.

THE COURT: You would apply different standards?

[OWENS]: Yes.

After this exchange, the Commonwealth's attorney questioned Owens about his ability to follow the instructions given by the trial court. Owens responded, "I think so, yes," when the Commonwealth's attorney asked if he could follow an instruction from the Court on "what force is justified and what force is not justified" and give the defendant and Commonwealth a fair trial. Owens then agreed with the Commonwealth's statement that he would hear the facts before reaching a verdict.

Defense counsel then questioned Owens regarding his earlier assertion that he would apply a different standard in self-defense for a man versus a woman.

[DEFENSE COUNSEL]: Well, I mean, this is not a normal situation that you find yourself in here today, sir. So I don't want to how to -- how do I phrase this? You know, I guess how do you reconcile the fact that you just said that you would put a different standard for a man versus a woman versus a man versus man following the law and being fair here today?

[OWENS]: Men are stronger and bigger and can protect themselves from, you know. I don't exactly know how to answer that, but I have never been in that situation. So –

[DEFENSE COUNSEL]: Well, do you think based on that different standard that that could possibly cause you to be not entirely fair, considering in this case it's alleged that it's man versus woman?

- 4 -

[OWENS]:  Well, I believe in defending yourself.  I don't really know how to answer your question.  But, no, I think I could give a fair judgment, the best I can tell you.

THE COURT:  Sir, if I understand what you are saying, though, as to what was reasonable force would be something you would have to consider?

[OWENS]:  Yes, sir.

THE COURT:  The whole scenario would determine reasonable force?
[OWENS]:  Yes, sir.

THE COURT:  Okay.

[DEFENSE COUNSEL]:  But, Judge, can I have one follow-up?

THE COURT:  Yes, sir.

DEFENSE COUNSEL:  But do you believe that what is reasonable should be different depending on if the person is a man or if the person is a woman?

[OWENS]:  Well, a woman could pull a trigger as good as a man can.  So I guess no.  But a big man and a little woman, if you are going to come in here and fist fight, yes, I believe it should be different.

During argument regarding whether Owens and another juror should be struck, appellant contended that "they're going to hold a different standard . . . just based solely on the sex of one of the parties."  The court denied appellant's motion to strike Owens for cause, stating that "Owens made it clear that he used the example of a woman can fire a gun just as much as man can.  So I think he understood the distinction."  The court struck four other prospective jurors who expressed that they would use a different standard for self-defense if a man was defending against a man rather than against a woman.

The jury found appellant guilty of assault and battery of a family member, in violation of Code § 18.2-57.2, and sentenced him to nine months in jail.  Appellant appeals his conviction to our Court.

## II. ANALYSIS

On appeal, appellant argues that the trial court erred in denying his motion to strike for cause Juror Owens.[1] Appellant alleges that the trial court failed to resolve a reasonable doubt regarding Owens' impartiality after he expressed a belief that "that no man ever has a right to raise a fist to a woman."

> On appellate review, we give deference to the trial court's determination whether to exclude a prospective juror, because the trial court was able to see and hear each member of the venire respond to the questions posed. Thus, the trial court is in a superior position to determine whether a juror's responses during *voir dire* indicate that the juror would be prevented or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath.

Thomas v. Commonwealth, 279 Va. 131, 164, 688 S.E.2d 220, 238 (2010) (quoting Lovitt v. Commonwealth, 260 Va. 497, 510, 537 S.E.2d 866, 875 (2000)). A trial court's denial of a motion to strike a juror for cause "will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion." Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d 731, 732 (2001).

The right of an accused to a trial by an impartial jury is guaranteed by both the Constitution of the United States and the Constitution of Virginia. U.S. Const. amends. VI, XIV; Va. Const. art. I, § 8. "It is the duty of the trial court, through the legal machinery provided for

---

[1] On appeal, the Commonwealth argues that this assignment of error is procedurally barred. The Commonwealth contends that because appellant did not object to the seating of the jury containing Owens, appellant has waived his prior objection, citing in support Spencer v. Commonwealth, 238 Va. 295, 306-07, 384 S.E.2d 785, 793 (1989) (holding that a party waives a *voir dire* objection when he objects to rulings on prospective jurors during *voir dire* but fails to object to the seating of that juror). We find Spencer inapplicable to the instant case. In Spencer, the defendant only objected to questions or limitations on questions asked of individual jurors during *voir dire*. The defendant did not make a motion to strike a juror; he only objected to the trial judge's ruling that his counsel could not ask a potential juror a certain question and on the phrasing of another question. Here, appellant, through his timely motion to strike a juror for cause, has afforded the trial court a fair opportunity to rule intelligently on the issue of the impartiality of the prospective juror.

that purpose, to procure an impartial jury to try every case." Lovos-Rivas v. Commonwealth, 58 Va. App. 55, 60, 707 S.E.2d 27, 30 (2011) (quoting Salina v. Commonwealth, 217 Va. 92, 93, 225 S.E.2d 199, 200 (1976)). "Whether a juror is impartial is a pure question of historical fact." David v. Commonwealth, 26 Va. App. 77, 81, 493 S.E.2d 379, 381 (1997). In determining whether a juror is impartial, we consider "the juror's entire *voir dire*, not merely isolated statements." Lovitt, 260 Va. at 510, 537 S.E.2d at 875. "[A]ny reasonable doubt as to a juror's qualifications must be resolved in favor of the accused." Breeden v. Commonwealth, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976).

"Jurors are not expected to be learned in legal maxims." Id. at 300, 227 S.E.2d at 736. "It is not uncommon to discover during *voir dire* that prospective jurors have preconceived notions, opinions, or misconceptions about the criminal justice system, criminal trials and procedure, or about the particular case." Cressell v. Commonwealth, 32 Va. App. 744, 761, 531 S.E.2d 1, 9 (2000) (quoting Griffin v. Commonwealth, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995)). "The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." Justus v. Commonwealth, 220 Va. 971, 976, 266 S.E.2d 87, 91 (1980) (quoting Slade v. Commonwealth, 155 Va. 1099, 1106, 156 S.E. 388, 391 (1931)). "[T]he test of impartiality is whether the venireperson can lay aside . . . preconceived views and render a verdict based solely on the law and evidence presented at trial." Griffin, 19 Va. App. at 621, 454 S.E.2d at 364. Evidence of a venireman's impartiality "should come from him and not be based on his mere assent to persuasive suggestions." Bradbury v. Commonwealth, 40 Va. App. 176, 181, 578 S.E.2d 93, 95 (2003) (quoting Breeden, 217 Va. at 300, 227 S.E.2d at 736).

Here, taking into consideration the applicable legal principles, the trial court did not err in denying appellant's motion to strike, as Owens' own statements demonstrated that he was able to sit as an impartial juror. While Owens initially agreed with the statement that "no man ever has a right to raise a fist to a woman," as expressed by another juror during *voir dire*, his later statements established that he would use appropriate considerations in determining whether appellant had a valid self-defense claim. When the Commonwealth's attorney asked whether, if the trial court instructed him on what constituted justified force, he could follow that instruction and give both sides a fair trial, Owens responded, "I think so, yes, sir." Owens then agreed that he would hear the facts before reaching a verdict. Owens himself stated that he believed in self-defense and thought that in a general situation, self-defense would depend on what the woman was doing and how much force was needed for someone to defend themselves. Owens indicated that he would consider the size and strength of an individual in determining whether self-defense was justified. Finally, he stated that he did not think that whether an action constitutes reasonable force should depend on gender, using the example of a woman "pulling a trigger as good as a man can." Here, while Owens expressed a view that men should be held to a different standard regarding self-defense, his statements, viewed in totality, simply demonstrate the legally permissible belief that size and strength are factors that can be considered in determining whether self-defense is justifiable.[2] See Boblett v. Commonwealth, 10 Va. App. 640, 649, 396 S.E.2d 131, 136 (1990) (finding no error in refusing to strike juror who initially

---

[2] It is plain from the jury instructions that a finding of self-defense involved an evaluation of what was reasonable in light of all the circumstances, including the relative physical size of the parties. In this case, the jury was given two self-defense instructions, one with fault and one without fault. Both instructions direct the jury to find appellant not guilty if they find, amongst other requirements, that "he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm" and that "he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm."

expressed a preconceived opinion about the insanity defense, but later expressed in his own words an ability to set that preconception aside and follow the instructions of the court).

Additionally, it is significant that many of Owens' statements regarding self-defense were expressed by him, and were not "mere assent to persuasive suggestions." Bradbury, 40 Va. App. at 181, 578 S.E.2d at 95 (quoting Breeden, 217 Va. at 300, 227 S.E.2d at 736). His answers, which were not merely "yes" or "no" responses to questions asked by the trial court or counsel, provided the trial court with evidence of his impartiality. In the instant case, the trial judge had the opportunity to observe Owens' demeanor, to hear his responses, and to form an opinion as to whether he had a fair, impartial, and open state of mind. Based upon this record, the trial judge did not abuse his discretion in refusing to strike Owens for cause.

### III. CONCLUSION

We find no merit in appellant's contention that the trial court abused its discretion in refusing to strike Owens for cause. The decision of the trial court is affirmed.

Affirmed.